UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff-Appellant, v. MARGARET B. DARE *et al.*, Defendants-Appellees.

First District (1st Division)  No. 1—04—1216

Opinion filed May 31, 2005.

Esther Joy Schwartz, Kenneth J. Hogan, and Richard D. Foody, all of Stellato & Schwartz, Ltd., of Chicago, for appellant.

Jeffrey J. Kroll and Robert P. Sheridan, both of Clifford Law Offices, and Nunzio C. Radogno and Jessica L. Nugent, both of Radogno, Cameli & Hoag, P.C., both of Chicago, for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

Robert Ellingson bought a horse trailer from defendant-appellee Margaret Dare. Thereafter, Ellingson sued Dare for injuries he sustained because of a failure in the trailer's "butt chain," which is a chain intended to restrain a horse at the rear end of the trailer (the underlying action). Specifically, Ellingson alleged that the failure of the butt chain resulted in the release of a horse from the trailer, causing Ellingson injuries. Dare tendered the underlying action to her homeowner's insurer, United Services Automobile Association (USAA). USAA filed a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Dare based on an exclusion in Dare's homeowner's policy. It then filed a motion for summary judgment on the same grounds. The trial court denied USAA's motion, finding that certain language in the policy exclusion was ambiguous. Dare subsequently filed a motion for summary judgment asserting that because the policy exclusion was ambiguous, she was entitled to summary judgment on the duty to defend as a matter of law. The trial court granted Dare's motion for summary judgment, holding that USAA had a duty to defend. USAA appeals both summary judgment orders.

The underlying action arose out of personal and pecuniary injuries sustained by Ellingson when a horse was released from the trailer he purchased from Dare. Count VII of Ellingson's third amended complaint (complaint) alleged strict liability against Dare. Count VIII of the complaint alleged that Dare was negligent for the same conduct set forth below in count VII. Specifically, count VII, paragraph 1, alleged that Dare was an Illinois resident who "owned, operated, maintained, and controlled horse trailers for personal use at her property." Paragraph 2 alleged that after Dare "purchased" the trailer at issue, she "maintained, modified, altered, and changed said horse trailer, in such a manner that the trailer was equipped with a butt chain for use in containing a horse inside the trailer." The trailer was "sold" by Dare to Ellingson equipped with this butt chain. The complaint also alleged that Dare failed to design the trailer with a "mechanism to adjust the height" of the butt chain "to accommodate horses of various sizes" and with "a proper and secure snap hook" for the butt chain restraining device. It further claimed that Dare failed to properly warn users of the "risks, dangers, limitations and defects" of the butt chain for restraining horses and that Dare "designed, modified, marketed, distributed, and sold" the trailer when she knew or should have known that the trailer was incapable of properly restraining a horse.

Count VII, paragraph 6, of the complaint alleged that while a horse was on the subject trailer, the "butt chain failed, which resulted in the release of the horse from the trailer which had been altered, modified, changed and sold by *** Dare." Paragraph 8 alleged that when the subject trailer left the control of Dare, it was in an unreasonably dangerous condition in one or more of the following respects:

"a. the *** [t]railer was maintained, designed, modified, equipped, distributed and sold with a 'butt chain' that was inadequate for restraining horses;

b. the *** [t]railer was maintained, designed, modified, distributed and sold with design and component characteristics that rendered it unsafe and incapable of properly restraining a horse;

c. [Dare] maintained, designed, modified, distributed, and sold the *** [t]railer with a 'butt chain' when [Dare] knew or should have known that the 'butt chain' was an inadequate device for restraining horses on her horse trailer;

d. [Dare] maintained, designed, modified, distributed, sold and provided [Ellingson's trailer] with a 'butt chain' that was of inadequate tensile strength to properly secure a horse;

e. [Dare] maintained, recommended, equipped, provided, installed, and sold a *** [t]railer with a 'butt chain' that was of inadequate tensile strength to properly secure a horse;

f. [Dare] maintained, designed, modified, distributed, and sold the *** [t]railer without performing proper and adequate testing of the trailer, including resistance testing of the 'butt chain's' ability to secure horses;

g. [Dare] maintained, designed, modified, marketed, distributed and sold the *** [t]railer when she knew or should have known that the *** [t]railer was incapable of properly restraining a horse during normal and foreseeable use;

h. [Dare] failed to properly warn users of the risks, dangers, limitations and defects of the 'butt chain' for restraining horses;

i. [Dare] failed to design, modify, install, and equip the *** [t]railer with a mechanism to adjust the height of the 'butt chain' to accommodate horses of various sizes;

j. [Dare] failed to design, modify, equip and provide the *** [t]railer with a proper and secure snap hook for the 'butt chain' restraining device; and

k. [Dare] was otherwise unreasonably dangerous."

Counts VII and VIII alleged that because of the aforementioned "unreasonably dangerous conditions" and "negligent acts or omissions," respectively, Ellingson sustained injuries of a personal and pecuniary nature.

Dare tendered the defense of the underlying action to her homeowner's insurer, USAA. At the time of the claim, Dare was insured by USAA under policy number CIC 00318 27 92 91A (the policy). Section II, entitled "LIABILITY COVERAGES," provided in "COVERAGE E" that the insured would be covered for personal liability and stated the following:

"If a claim is made or a suit is brought against an Insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability."

On the definitions page of the policy, "occurrence" was defined as:

"an accident *** which results, during the policy period, in:

a. bodily injury; or

b. property damage."

In "COVERAGE F," the policy covered "Medical Payments To Others" and specifically stated the following, in relevant part:

"We will pay the necessary medical expenses that are incurred *** from the date of an accident causing bodily injury. *** This coverage does not apply to you or regular residents of your household except residence employees. As to others, this coverage applies only:

* * *

2. To a person off the Insured location, if the bodily injury; ***

b. is caused by the activities of the Insured[.]"

The policy also contained the following exclusion which stated:

"Medical Payments to Others do not apply to bodily injury or property damage:

* * *

e. arising out of:

(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an Insured."

The policy did not define "ownership" or "maintenance," nor did the policy specifically state whether the insured must have owned the trailer at the time of the accident for the exclusion to apply.

USAA filed a declaratory judgment action in the trial court on March 4, 2003, which asserted that USAA had no duty to defend or indemnify based on the policy exclusion. On July 10, 2003, USAA also filed a motion for summary judgment on the same grounds. In ruling on USAA's summary judgment motion, Judge Deborah Mary Dooling said, "this Court will only address Dare and Ellingson's arguments that the plain language of the exclusion cited by [USAA] does not preclude coverage because the language of the exclusion is ambiguous." Judge Dooling subsequently denied USAA's summary judgment motion on February 13, 2004, concluding that the word "maintenance" in the policy exclusion was subject to more than one interpretation and because Ellingson's complaint alleged more than one theory of recovery and potentially came within the policy coverage. On March 19, 2004, Dare filed a motion for summary judgment on the duty to defend which alleged that the allegations of the complaint fell potentially within the policy coverage because the trial court determined that the term "maintenance" in the policy exclusion was ambiguous. Judge David Donnersberger granted Dare's motion for summary judgment and found that USAA had a duty to defend Dare in the underlying action. USAA appeals the orders entered by the trial court judges on February 13, 2004, and April 5, 2004.

As a preliminary matter, we consider whether we have jurisdiction over the denial of USAA's motion for summary judgment entered by

Judge Dooling on February 13, 2004. Ellingson contends our jurisdiction is limited to the April 5, 2004, order granting summary judgment to Dare and does not extend to the "otherwise unappealable" February 13, 2004, interlocutory order denying USAA's motion for summary judgment. USAA claims this court has jurisdiction over both orders under Supreme Court Rule 304(a) (which requires an express written finding in the order that there is no just reason for delaying an appeal) or Supreme Court Rule 301 (which states that every final judgment of a circuit court in a civil case is appealable as of right). 155 Ill. 2d R. 304(a); 134 Ill. 2d R. 301. We agree with Ellingson for the following reasons.

■ In *Chavda v. Wolak*, 188 Ill. 2d 394, 403, 721 N.E.2d 1137 (1999), the supreme court discussed the general rule that the denial of a motion for summary judgment is ordinarily not a final judgment and therefore is not appealable. The court also noted that an exception exists where the parties file opposing motions for summary judgment on the same claim and the trial court grants one motion and denies the other. *Chavda*, 188 Ill. 2d at 403, citing *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 358, 718 N.E.2d 191 (1999).

In *Arangold*, the supreme court explained that the reason for the general rule above is that a final judgment is generally a prerequisite to appellate jurisdiction and an order denying summary judgment is not a final judgment. *Arangold*, 187 Ill. 2d at 357. As in *Chavda*, the court recognized that in situations involving opposing motions for summary judgment on the same claim, where one party's motion has been granted and the other's has been denied, it is proper for an appellate court to review the denial of a summary judgment motion in conjunction with review of a final judgment. *Arangold*, 187 Ill. 2d at 358. In these situations, the court reasoned that the resulting order is final and appealable because it entirely disposes of the litigation. *Arangold*, 187 Ill. 2d at 358. However, the court was careful to point out that this exception to the general rule does not apply in cases where a party seeks review of a denial of summary judgment in conjunction with review of a final judgment on a separate claim. *Arangold*, 187 Ill. 2d at 358.

■ We also point out that generally the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293, 757 N.E.2d 481 (2001). Whether an insurer has a duty to indemnify an insured for particular liability " 'is only ripe for consideration if the insured has already incurred liability in the underlying claim against it.' [Citations.]" *Eljer*, 197 Ill. 2d at 293. Once the insured has incurred

liability because of the underlying claim, an insurer's duty to indemnify arises only "if 'the insured's activity and the resulting loss or damage *actually* fall within the \*\*\* policy's coverage.' (Emphasis in original.) [Citation.]" *Eljer*, 197 Ill. 2d at 293. On the other hand, the duty to defend is determined by reference to the allegations in the complaint, and if the complaint alleges facts that fall within or potentially within the policy's coverage, the insurer is obligated to defend the action. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992). The duty of an insurer to defend is much broader than its duty to indemnify. *Outboard Marine*, 154 Ill. 2d at 125. An insurer's duty to defend and its duty to indemnify its insured are separate and distinct duties. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52, 514 N.E.2d 150 (1987).

■ In its summary judgment motion, USAA sought a declaration that it had no duty to defend or to indemnify Dare in the underlying action. But a review of Judge Dooling's February 13, 2004, order indicates that she did not rule on whether USAA had a duty to defend. As pointed out above, she said she would only "address Dare and Ellingson's arguments that the plain language of the exclusion cited by [USAA] does not preclude coverage because the language of the exclusion is ambiguous." She thereafter denied USAA's motion because the term "maintenance" in the policy was ambiguous. The order did not contain Rule 304(a) language, nor did it state that it was a final order.

Dare's later motion for summary judgment sought a declaration only on the duty to defend based on the ambiguous exclusion in the policy. In the April 5, 2004, order, Judge Donnersberger, who used Judge Dooling's order as a basis for his ruling, granted Dare's motion and found that USAA had a duty to defend. The April 5, 2004, order did contain Rule 304(a) language but did not address the duty to indemnify.

USAA relies upon *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 72, 739 N.E.2d 85 (2000), in support of its argument that we have jurisdiction over the February 13, 2005, order. In *Fremont*, the defendant insured was sued by an employee seeking damages for personal injuries. The plaintiff insurer sought a declaratory judgment that it was not required to defend or to indemnify the insured. The plaintiff then filed a motion for summary judgment on the same grounds. Approximately four months later, the insured filed a motion for partial summary judgment only with respect to the issue of the plaintiff's duty to defend. In an order dated January 10, 2000, the trial court granted the insured's motion for partial summary judgment, denied the plaintiff's motion for summary judgment, and stated that the plaintiff had a duty to defend its insured.

However, the trial court reserved ruling on the question of the plaintiff's duty to indemnify in this order.

The appellate court addressed its own jurisdiction because the insured argued that the trial court's order was not final and appealable under Rule 304(a). The insured specifically argued that the plaintiff's duty to defend and duty to indemnify comprised a single claim and the trial court did not fully dispose of the indemnification issue. The appellate court noted the well-settled rule that "an insurer's duty to defend and its duty to indemnify its insured are separate and distinct duties. [Citation.]" *Fremont*, 317 Ill. App. 3d at 72. It therefore found that the trial court's order disposing of the duty to defend, but reserving judgment on the duty to indemnify, was a final determination. *Fremont*, 317 Ill. App. 3d at 72. With respect to the summary judgment motions, the court also concluded that although the denial of a motion for summary judgment is ordinarily not final and appealable, it was proper to review an order denying a motion for summary judgment if the appeal from that order was brought in conjunction with an appeal from an order granting a cross-motion for summary judgment on the same claim. *Fremont*, 317 Ill. App. 3d at 72. Because both summary judgment motions involved the duty to defend, the court found it proper to review the entirety of the plaintiff's motion for summary judgment, stating that "where no duty to defend exists, no duty to indemnify could ever exist. [Citation.]" *Fremont*, 317 Ill. App. 3d at 73.

We decline to follow the reasoning in *Fremont* for several reasons.

First, the *Fremont* court reviewed the January 10, 2000, order in its entirety reasoning that if the insurer was entitled to summary judgment with regard to the duty to defend, it was necessarily entitled to the entry of summary judgment "on the portion of its motion regarding its duty to indemnify." *Fremont*, 317 Ill. App. 3d at 73. The court went on to determine that the insurer had no duty to defend because the allegations in the underlying complaint did not bring the action even potentially within the coverage provisions of the policy. *Fremont*, 317 Ill. App. 3d at 76-77. Because no duty to indemnify could exist in the absence of a duty to defend, the *Fremont* court found that summary judgment with respect to the insurer's duty to defend and duty to indemnify was improperly denied by the trial court. *Fremont*, 317 Ill. App. 3d at 77.

Second, although we acknowledge the general rule that where no duty to defend exists there is no duty to indemnify, we still conclude that the summary judgment motions here involved separate claims. USAA's summary judgment motion sought a declaration that USAA had no duty to defend or to indemnify Dare, but in the February 13,

2004, order Judge Dooling merely denied USAA's motion for summary judgment and she did not rule on the duty to defend at that time. Dare's subsequent motion for summary judgment sought a declaration only on the duty to defend, which is separate and distinct from the duty to indemnify. *Zurich*, 118 Ill. 2d at 52. As noted above, Judge Donnersberger only ruled on the duty to defend. In doing so, he granted Dare's motion and included Rule 304(a) language in the April 5, 2004, order. However, the February 13, 2004, order was interlocutory and was not a final order as set forth by the supreme court above. *Chavda*, 188 Ill. 2d at 403; *Arangold*, 187 Ill. 2d at 357. Because these motions for summary judgment involved separate claims, the exception to the general rule set forth in *Chavda* and *Arangold* above does not apply.

We therefore conclude our jurisdiction is limited to the April 5, 2004, order entered by Judge Donnersberger on the duty to defend because that order was final and appealable.

We now consider whether the summary judgment order granted in favor of Dare was proper. The granting of summary judgment by the trial court is subject to *de novo* review. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 821 N.E.2d 206 (2004). The construction of an insurance policy is a question of law and is also reviewed *de novo*. *National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.*, 329 Ill. App. 3d 228, 233, 769 N.E.2d 977 (2002).

In general:

> "To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.]" *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98, 741 N.E.2d 253 (2000).

As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured. *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501, 512, 722 N.E.2d 755 (1999).

Also, insurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer. *Mount*

*Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care,* 343 Ill. App. 3d 309, 314, 795 N.E.2d 1034 (2003). Provisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and against the insurer. *State Farm Mutual Automobile Insurance Co. v. Villicana,* 181 Ill. 2d 436, 442, 692 N.E.2d 1196 (1998). Finally, if the application of an exclusion results in denying the duty to defend, that exclusion " 'must be clear and free from doubt' ***. [Citation.]" *Mount Vernon,* 343 Ill. App. 3d at 320-21.

USAA argues that the policy exclusion unambiguously applies and there is no duty to defend because the liability asserted in the underlying action clearly "[arose] out of" Dare's ownership and maintenance of the horse trailer, which falls within the scope of the exclusion. Dare responds that the policy exclusion is ambiguous because the exclusion does not set forth any time constraints pertaining to "ownership" or "maintenance," nor does the policy define these terms. According to Dare, it is unclear when the exclusion would apply because the plain meaning of the "arising out of the ownership or maintenance" language suggests the exclusion would apply only while the trailer is owned or maintained by the insured. Since Dare did not own the trailer at the time of the occurrence, both Dare and Ellingson argue that the exclusion does not apply to bar coverage and USAA has a duty to defend. Dare and Ellingson also contend there are multiple allegations in the complaint outside of the maintenance exclusion that fall within or potentially within the terms of the policy and, therefore, the duty to defend is triggered.

We agree with the defendants that there are multiple allegations in the complaint that are outside the exclusion and fall within or potentially within the policy's coverage.

As set out above, counts VII and VIII of the complaint, in paragraphs 8(a) through 8(c), respectively, allege that the trailer was "maintained, designed, modified, distributed and sold" with a butt chain that was inadequate because of design and component characteristics that rendered it unsafe when Dare knew or should have known that the butt chain was an inadequate device for restraining horses. Paragraph 8(d) alleged that Dare "maintained, designed, modified, distributed, sold and provided" Ellingson's trailer with a butt chain that was of inadequate tensile strength to properly secure a horse. Paragraph 8(f) alleged that Dare "maintained, designed, modified, distributed, and sold" the trailer without performing proper and adequate testing of the trailer, including resistance testing of the butt chain's ability to secure horses. In addition to all of these allegations, paragraph 8(h) alleged that Dare failed to properly warn users of the risks, dangers, limitations, and defects of the butt chain for restrain-

ing horses. Paragraph 8(i) alleged that Dare "failed to design, modify, install and equip" the trailer with a mechanism to adjust the height of the butt chain to accommodate horses of various sizes. Finally, paragraph 8(j) alleged that Dare "failed to design, modify, equip and provide" the trailer with a proper and secure snap hook for the butt chain restraining device.

■ The allegations above, but more specifically the allegations in paragraphs 8(h) through 8(j), allege that Dare failed to warn the purchaser of the risks and defects of the butt chain, failed to design a trailer with a mechanism to adjust the height of the butt chain, and failed to design the trailer with a proper and secure snap hook for the butt chain. Additionally, because there are multiple allegations that Dare designed, modified, equipped, marketed, distributed, and sold a trailer which had design defects, that are separate and distinct claims from the allegations concerning Dare's ownership and maintenance of the trailer, we conclude that they come within or potentially within the policy coverage. The duty to defend applies to cases "where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage." *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 107 Ill. App. 3d 190, 194, 437 N.E.2d 663 (1982). Further, "if the liability of an insured arises from negligent acts which constitute non-auto-related conduct, the policy should be applicable regardless of the automobile exclusion." *United States Fidelity & Guaranty Co.*, 107 Ill. App. 3d at 194 (holding that allegations of failure to adequately supervise children and negligent operation of a day care center were claims of non-auto-related conduct). Here, the allegations that Dare designed an unreasonably dangerous trailer, marketed and sold the product, and failed to warn potential users of the trailer's risks, dangers, and limitations are different from the allegations that she maintained the trailer as set forth in the exclusion.

USAA argues that Dare's maintenance of the horse trailer as pled in paragraphs 8(a) through (f) is "linked" to her "modifying," "altering," and "changing" the horse trailer by the conjunction "and," and therefore the term "maintenance" cannot be separated from the allegations that concern modifying, altering, or changing the trailer. According to USAA, because the exclusion applies to "maintenance," the allegations of modifying, altering, or changing the trailer, which are "linked" to this term, are also excluded. We are unpersuaded by USAA's argument because when considering whether an insurer has a duty to defend, both the underlying complaint's allegations and the relevant policy provisions must be liberally construed in the insured's

favor. *General Star Indemnity Co. v. Lake Bluff School District No. 65*, 354 Ill. App. 3d 118, 122, 819 N.E.2d 784 (2004). Giving appropriate deference to this standard, we do not find that the allegations concerning modifying, altering, or changing the trailer are "linked" to the term "maintenance" by the word "and."

Further, USAA's argument on this point fails to address the complaint's other specific allegations that Dare failed to properly warn users of the dangers and defects of the butt chain, failed to design the trailer with a mechanism to adjust the height of the butt chain, and failed to design the trailer with a proper and secure butt chain snap hook. As discussed above, we consider these allegations to be independent from the exclusionary terms of ownership or maintenance of the trailer.

USAA relies upon *Northbrook Property*, cited above, for the proposition that "so long as Ellingson's injury arises out of Dare's maintenance of the horse trailer, the vehicle exclusion applies." *Northbrook* involved an appeal from the appellate court's determination that the plaintiff, Northbrook Property and Casualty Company (Northbrook), had a duty to defend certain school districts in lawsuits that arose out of a collision between a Metra train and a school bus, which resulted in the death of several school children.

At the time of the accident, one of the insurance policies the school districts had in force was a commercial general liability policy which provided that the following losses were not covered:

> " ' "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated or rented or loaned to any insured. Use includes operation and "loading or unloading." *** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.' " *Northbrook*, 194 Ill. 2d at 98.

Northbrook filed a declaratory judgment action in the trial court asserting that it had no duty to defend under the policy because the injuries arose out of the use or operation of a bus. The trial court granted summary judgment in favor of Northbrook but the appellate court reversed, holding that the lawsuits adequately alleged that the injuries could have arisen from causes other than the use or operation of a bus such as the failure of the school districts to adequately plan and inspect bus routes and warn bus drivers of potential hazards. *Northbrook*, 194 Ill. 2d at 98.

On review, the supreme court found that the allegations of the underlying complaints utterly failed to state facts that either actually or potentially brought the cases within the policy's coverage. *North-*

*brook*, 194 Ill. 2d at 98. The court observed that the policy excluded injuries arising from the school districts' use or operation of a motor vehicle. *Northbrook*, 194 Ill. 2d at 98-99. It further noted that the school districts' inadequate planning, inspection of bus routes and failure to warn bus drivers of potential hazards were "nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle." *Northbrook*, 194 Ill. 2d at 99. The court reversed the appellate court and concluded that Northbrook had no duty to defend. *Northbrook*, 194 Ill. 2d at 99.

*Northbrook* is distinguishable from the instant case. First, in *Northbrook*, the insured school districts clearly operated the bus that was being used at the time of the occurrence. To the contrary, the insured in this case did not own or operate the trailer at the time of the occurrence, nor was Dare maintaining the trailer at the time of the occurrence. Further, the allegations in the underlying complaint here are not mere "rephrasings" that Dare owned or maintained the trailer at the time of the occurrence. Instead, the allegations are that Dare "designed," "equipped," "marketed," "distributed," and "sold" the trailer. Further, there are allegations that she failed to warn Ellingson of the unreasonable risks of the defective butt chain. These allegations claim that Ellingson's injuries arose from a design defect created by Dare, not merely from her ownership or maintenance of the butt chain. Again, if the allegations of the complaint are within or potentially within a policy's coverage, the insurer is required to defend even if the allegations "may be groundless, false, or fraudulent." *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 904, 649 N.E.2d 946 (1995). We find these additional allegations are separate, distinct, and outside the language of the exclusion. We therefore find *Northbrook* to be distinguishable.

We also find that the term "maintenance" is ambiguous as written in the policy exclusion.

As noted above, the term "maintenance" is not defined in the policy here. Generally, "maintenance" is defined as "[t]he upkeep or preservation of condition of property, including cost of ordinary repairs necessary and proper from time to time for that purpose." Black's Law Dictionary 953 (6th ed. 1990). USAA argues that the definition of "maintenance" encompasses all of the allegations that are tied to it by the conjunctive word "and" in the complaint. Specifically, Dare's "maintaining" the horse trailer, as pled in the conjunctive, is synonymous with the allegations of modifying, altering, and changing the horse trailer according to USAA. USAA claims the allegation of maintenance cannot be separated from modifying, altering, or changing the trailer. This argument, however, works against USAA because

the word "maintaining" takes on a different meaning than that defined above.

Since the term "maintenance" could mean "upkeep," as it is generally understood, or could reasonably encompass a broader definition, as suggested by USAA, it is subject to more than one interpretation and is ambiguous. Therefore, the provision should be resolved in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 80, 578 N.E.2d 926 (1991).

Finally, USAA argues that for liability to arise out of the insured's "ownership" under the exclusion, all that is necessary is that the insured's ownership is a "necessary link" in the chain of causation leading to the liability asserted by the underlying plaintiff. It further claims that the proper test is the application of a "but for" causation analysis in this case, specifically, "but for" Dare's ownership of the horse trailer, Ellingson would not have suffered the alleged injury. According to USAA, because Dare's ownership of the horse trailer was a necessary link in the chain of causation leading to Ellingson's damage, the exclusion applies and there is no duty to defend. Both Dare and Ellingson argue that the exclusion does not apply. They specifically claim that because Dare did not own, operate, or have any control over the trailer at the time of the occurrence, the underlying injuries did not arise out of the ownership or maintenance of the trailer. In addition, Dare contends that the exclusion is ambiguous because it "does not set forth any time constraints pertaining to 'ownership' or 'maintenance' nor [does] the policy define [those] terms."

USAA relies upon language in *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 155, 466 N.E.2d 1091 (1984). In *Maryland Casualty*, the plaintiff, Maryland Casualty Company (Maryland), appealed a summary judgment order granted to the defendant, Chicago and North Western Transportation Company (C&NW), in a declaratory judgment suit. In that order the trial court found that Maryland was obligated to defend and indemnify C&NW in a negligence action filed against C&NW by an employee of C&NW's lessee, Demos News, Inc. (Demos). Demos maintained several newsstands in C&NW's passenger terminal located at 500 West Madison Street, Chicago, and the Demos employee was assaulted and raped approximately 10 feet from one of these newsstands when she reported for work.

The victim's negligence action against C&NW alleged that her attack and resulting injuries were proximately caused by C&NW's negligence in controlling and maintaining the passenger terminal. C&NW sought a defense for this claim under a commercial general liability (CGL) policy issued by Maryland to Demos under which C&NW

was a named an additional insured, but " 'only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured.' " *Maryland Casualty*, 126 Ill. App. 3d at 153. Maryland filed a declaratory judgment action and motion for summary judgment on the ground that it had no duty to defend or indemnify because the policy language above precluded any defense obligations to C&NW. Specifically, Maryland argued that the attack, which occurred before the employee began work, did not arise from Demos' use of the premises but from the victim's mere presence in the terminal, which was open to the public. According to Maryland, such activity was outside the scope of coverage provided to C&NW in the policy. C&NW contended that the policy covered the entire passenger terminal.

One of the issues on appeal was whether Maryland had a duty to defend C&NW under the terms of the CGL policy issued to Demos. In determining the propriety of granting summary judgment to C&NW, the appellate court considered whether the attack on the victim arose " 'out of the ownership, maintenance or use' " of the designated leased premises. *Maryland Casualty*, 126 Ill. App. 3d at 154. The court noted that the term "arising out of" is both "broad and vague" and must be liberally construed in favor of the insured; accordingly, it held "but for" causation, not necessarily proximate causation, satisfied this language. *Maryland Casualty*, 126 Ill. App. 3d at 154. It further observed that " '[a]rising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.' [Citation.]" *Maryland Casualty*, 126 Ill. App. 3d at 154. In construing the policy liberally in favor of the insured, the court held that the victim's injuries arose from the operation and use of the leased premises, since they would not have been sustained "but for" the victim's employment on the premises owned by C&NW. *Maryland Casualty*, 126 Ill. App. 3d at 155. Thus, Maryland's duty to defend C&NW was found to be triggered. *Maryland Casualty*, 126 Ill. App. 3d at 155.

Here, USAA contends that *Maryland Casualty* clearly interprets the meaning of "arising out of" and that a "but for" test is the proper test to be applied for the purpose of determining whether the policy exclusion applies. According to USAA, *Maryland Casualty* also stands for the proposition that the causal relationship created by the phrase arising out of "clearly allows for an injury to occur after ownership of the vehicle ceases" so long as the injury originates from, has its origin in, grows out of, or flows from an insured's ownership of the vehicle. However, using this type of analysis, specifically, a case that interprets the phrase "arising out of" as it appears in a policy section providing coverage, offers minimal assistance in resolving the appropriate

interpretation of the same phrase as it appears in an exclusion. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 721-22, 648 N.E.2d 1099 (1995). That is because a broad interpretation here would expand the exclusion to the advantage of the insurer and would "turn on its head established judicial precedent regarding liberal construction of insurance policies in favor of the insured." *Oakley Transport*, 271 Ill. App. 3d at 721. When the application of an exclusion will result in denying the duty to defend, that exclusion must be clear and free from doubt. *Mount Vernon*, 343 Ill. App. 3d at 320-21.

USAA's position emerges from a strained interpretation of *Maryland Casualty* because C&NW never sold the premises upon which the victim was injured. Additionally, the injury arose at a time when the premises were owned by C&NW. The *Maryland Casualty* court was never called upon to address the specific question of ownership as it related to the insurance policy involved. In this case, however, Dare sold the trailer to Ellingson and the alleged injury occurred after the sale. The *Maryland Casualty* court did not consider whether the "but for" analysis associated with the "arising out of" language would apply if C&NW had not owned the premises at the time. Since this exclusion is not clear and free from doubt under the instant facts, we do not find *Maryland Casualty* to be helpful.

While our research reveals no Illinois decision that involves interpretation of the same policy exclusion under identical facts, we find one decision from Michigan to be persuasive. *Cf. Employers Mutual Liability Insurance Co. of Wisconsin v. Michigan Mutual Auto Insurance Co.*, 101 Mich. App. 697, 300 N.W.2d 682 (1980).

In *Employers Mutual Liability Insurance*, the insured installed a gas line and filter in a motor boat that he owned. The insured then sold the boat, which later exploded, resulting in injury to six people. The injured parties sued the insured alleging that he negligently installed the boat's gas line, which was the proximate cause of the explosion and resulting injuries.

At the time the insured owned the boat, he held a boatowner's insurance policy, two homeowner's policies, and a personal umbrella and medical expense policy from three different insurers. The insured sought representation and indemnification for the underlying action from all three insurers and each insurer denied coverage liability. For reasons not relevant here, the trial court determined that coverage under the boatowner's policy and one of the homeowner's policies was not triggered. The court did find that the insurer which issued the remaining homeowner's policy was liable for representation and indemnification of the insured in the underlying action and that the insurer which issued the umbrella policy was responsible for

indemnification in the event the damages exceeded the policy limits on the triggered homeowner's policy. The liable insurers appealed the trial court's findings.

The language in the triggered homeowner's policy excluded liability for " 'bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft *** owned by or rented to any Insured.' " *Employers Mutual Liability Insurance*, 101 Mich. App. at 705, 300 N.W.2d at 686. The exclusion in the umbrella policy contained similar language.

On review, the appellate court affirmed the trial court's coverage findings on the ground that the phrase " 'arising out of the ownership *** of any watercraft' is ambiguous in that it is not clear whether the insured must have owned the boat at the time of the accident for the exclusion to apply." *Employers Mutual Liability Insurance*, 101 Mich. App. at 705, 300 N.W.2d at 686. The court further explained that because ambiguity must be construed against the insurer and the time that damages arise is the crucial focal point, the exclusionary language at issue "applies only where the insured owns or rents the boat at the time of the occurrence." *Employers Mutual Liability Insurance*, 101 Mich. App. at 706, 300 N.W.2d at 686.

While *Employers Mutual Liability Insurance* involved a boat instead of a trailer, the facts are similar and the policy language is virtually identical to the language of the exclusion present here. As noted above, the policy does not define the term "ownership." "Ownership" is also subject to more than one interpretation because it is unclear if the exclusion applies only when the insured owned the trailer at the time of the occurrence or whether, as USAA suggests, ownership extends beyond the insured's sale of the property under the exclusion. An insurance policy provision is ambiguous if it is subject to more than one reasonable interpretation. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991). Here, the term "ownership" is subject to more than one reasonable interpretation and we find the term in this policy is ambiguous. Because an ambiguous policy exclusion must be construed against the insurer-drafter and in favor of coverage, we affirm the order entered on April 5, 2004, finding duty to defend.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.